IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RONALD POLANCO ORTEGA,

    Plaintiff,

vs.                                                                                                     2:16-cv-01074-LF

NANCY A. BERRYHILL,[1]
Deputy Commissioner for Operations,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on plaintiff Ronald Polanco Ortega's Motion to Reverse and Remand to Agency for Rehearing with Supporting Memorandum (Doc. 26), which was fully briefed August 16, 2017. Docs 27, 28, 29. Having carefully reviewed the parties' submissions, the administrative record, and the relevant law, I find that the motion is well taken in part and will GRANT IT IN PART and DENY IT IN PART, and remand this case to the Social Security Administration for further proceedings.

**I.    Standard of Review**

The standard that courts apply in reviewing the Commissioner's decision is the same regardless of whether the issue is termination of benefits or the initial denial of benefits. *See Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). The Court must determine whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct

---

[1] Nancy A. Berryhill, Deputy Commissioner for Operations, performing duties and functions not reserved to the Commissioner of Social Security, is automatically substituted for Acting Commissioner Carolyn W. Colvin, as the defendant in this suit. FED. R. CIV. P. 25(d).

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, as it is in this case.

legal standards were applied. *Maes v. Astrue,* 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart,* 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart,* 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted).

In the typical case, the Court's decision is based on a "meticulous" review of the entire record, where it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007). This case, however, can be resolved on an error of law. Therefore, all portions of the record that bear on the legal arguments raised by Mr. Ortega have been read and carefully considered, but I did not review every page of the medical documents in detail, as is usually the case. *See Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) ("[W]e meticulously examine the record as a whole, including anything that my undercut or detract from the ALJ's findings in order to determine if the **substantiality** test has been met.") (emphasis added). In this case, because "the ALJ failed to apply the correct legal test, there is ground for reversal **apart from** a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir.1993) (emphasis added).

## II. Applicable Law and Sequential Evaluation Process

With an initial disability determination, the Court applies a five step sequential evaluation process. 20 C.F.R. § 404.1520[3]; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The Social Security Act (the Act) provides that the Commissioner shall review disability cases to determine continuing eligibility. 42 U.S.C. § 421(i). The Commissioner may terminate benefits of an individual previously determined to be disabled if she finds that the physical or mental impairments which formed the basis for award of benefits have ceased, do not exist, or are no longer disabling. 42 U.S.C. § 423(f).

In accordance with the Act, the regulations provide for termination of benefits if there has been medical improvement in the recipient's impairment(s) that relates to the recipient's ability to work, and if the recipient is now able to engage in substantial gainful activity. 20 U.S.C. § 404.1594(a). The regulations define "medical improvement" as:

> any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s).

20 U.S.C. § 404.1594(b)(1).

---

[3] At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. § 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

In contrast to the five-step initial evaluation process for initial disability evaluations, the Commissioner has developed an eight-step sequential evaluation process to determine whether a claimant's disability continues or ends. 20 C.F.R. § 404.1594(f)(1–8); s*ee also Hayden v. Barnhart*, 374 F.3d 986, 988 (10th Cir. 2004). Step one requires the ALJ to determine if the claimant is engaging in substantial gainful activity. *Id.* Step two requires the ALJ to determine if the claimant has an impairment or combination of impairments that meets or equals a Listing.[4] *Id.* Step three requires a determination that there has been medical improvement as shown by a decrease in medical severity. *Id.* At step four, the ALJ must determine whether the medical improvement is related to the ability to do work. *Id.* At step five, if there has been no medical improvement, or if the improvement is not related to the ability to work, the ALJ must determine if an exception applies. *Id.* At step six, if medical improvement is shown to be related to the ability to do work (or if an exception applies), the ALJ must determine if all current impairments are severe, including a consideration of all current impairments and the impact of the combination of these impairments. *Id.* If one or more impairments are considered severe, at step seven, the ALJ must assess the claimant's ability to perform substantial gainful activity and whether the claimant could perform past relevant work. *Id.* At step eight, if the claimant cannot perform past relevant work, the ALJ must determine if there is other work the claimant could perform. *Id.* For each of the steps in a termination-of-benefits review, the burden is on the Commissioner. *See Hayden*, 374 F.3d at 991.

---

[4] 20 C.F.R. pt. 404, Subpt. P, app. 1.

### III. Background and Procedural History

Mr. Otero is a 47-year-old man with a high school education who has a history of working as a robot engineer, a meter reader, and performing meter repair. AR 20, 733–38.[5] In a decision dated March 8, 2011, the Social Security Administration (SSA) found Mr. Ortega disabled as of December 7, 2008, due to a combination of mental and physical limitations. AR 31–40. The SSA conducted a continuing disability review and determined that as of March 25, 2014, Mr. Ortega was no longer disabled. AR 42–49. Mr. Ortega requested a hearing, and Administrative Law Judge (ALJ) Eric Weiss conducted a hearing on April 26, 2016. AR 56, 729–55. The ALJ issued his unfavorable decision on May 25, 2016. AR 10–22.

In his decision, the ALJ found that the medical evidence established that as of March 25, 2014, Mr. Ortega had the severe impairments of atrial fibrillation, ventricular tachycardia, premature ventricular contractions, lumbar degenerative joint disease, asthma, dysthymia, depression, and sleep apnea. AR 16. The ALJ further found that Mr. Ortega's obesity, Gastroesophageal reflux disease (GERD), irritable bowel syndrome, and alcohol disorder were non-severe. *Id*. The ALJ then proceeded through the eight-step sequential evaluation process.

At step one, the ALJ found that Mr. Otero had not engaged in substantial gainful activity since the date his disability ended on March 25, 2014. AR 16. At step two, the ALJ found that Mr. Ortega did not have an impairment or combination of impairments that met or medically equaled a Listing. AR 17. At step three, the ALJ found that as of March 25, 2014, Mr. Ortega had shown medical improvement. *Id*. At step four, the ALJ found that the medical improvement

---

[5] Document 20-1 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination rather than to the CM/ECF document number and page.

was related to Mr. Ortega's ability to do work, and he therefore continued to step six.[6] *Id*. At step six, the ALJ found that Mr. Ortega continued to have a severe impairment or combination of impairments. *Id*. Accordingly, the ALJ assessed Mr. Ortega's RFC and found:

> Based on the impairments present as of March 25, 2014, [Mr. Ortega] had the residual functional capacity to perform sedentary work (lift 10 pounds occasionally, stand/walk for two hours in an eight-hour workday and sit for six hours in an eight-hour workday) as defined in 20 CFR 404.1567(a) except he can never climb ladders, ropes or scaffolds. [Mr. Otero] can occasionally stoop, crouch, kneel, crawl and climb ramps or stairs. He can frequently balance but must avoid more than occasional exposure to unprotected heights, dangerous moving machinery, excessive vibration, and extreme cold. The claimant is able to understand, remember and carry out detailed but not complex instructions and make commensurate work-related decisions and adjust to routine changes in [the] work setting. He is able to occasionally interact with supervisors, co-workers and the public. The claimant can maintain concentration, persistence and pace for two hours at a time with normal breaks.

AR 18. Having found that Mr. Ortega could perform a range of sedentary work, the ALJ continued to step eight.

At step eight, the ALJ determined that Mr. Ortega could not perform his past relevant work as a robot engineer (a skilled job[7]), a meter reader (a semi-skilled job), or meter repairer (a semi-skilled job), but that there were other jobs in the national economy that he could perform—

---

[6] As noted above, step five is only applicable if the Commissioner finds that there has been no medical improvement or that the medical improvement is not related to the claimant's ability to work. 20 C.F.R. § 404.1594(f)(5).

[7]     A skill is knowledge of a work activity that requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation that is above the unskilled level (requires more than 30 days to learn) (*See* SSR 82-41). Skills are acquired in PRW and may also be learned in recent education that provides for direct entry into skilled work.

SSR 00-4P, 2000 WL 1898704, at *2. The Commissioner uses material published by the Department of Labor (DOT) to classify occupations as unskilled, semi-skilled, and skilled. 20 C.F.R. § 404.1568. The DOT lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definitions in 20 CFR 404.1568, unskilled work corresponds to an SVP of 1 to 2; semi-skilled work corresponds to an SVP of 3 to 4; and skilled work corresponds to an SVP of 5 to 9 in the DOT. SSR 00-4P, 2000 WL 1898704, *3.

including matrix inspector, lock assembler and data entry worker—all semi-skilled jobs. AR 20–21. Because Mr. Ortega was "capable of making a successful adjustment to work that existed in significant numbers in the national economy," the ALJ determined that Mr. Ortega was not disabled. AR 21. The Appeals Council denied Mr. Ortega's request for review, thereby making the ALJ's decision the final decision of the Commissioner. AR 7–10. Mr. Ortega now appeals that decision.

**IV. Mr. Ortega's Claims**

Mr. Ortega raises three issues on appeal. First, Mr. Ortega contends that the ALJ erred by failing to properly consider the combination of impairments in evaluating whether a Listing was met. Doc. 26 at 6–8. Next, Mr. Ortega argues that the ALJ erred by failing to properly consider the opinion evidence from consultative examiner Patrick E. Silverthorne, M.D. *Id*. at 8–9. Finally, Mr. Ortega maintains that the ALJ erred at the final step of the sequential evaluation process by failing to inquire about or identify any transferable skills. *Id*. at 9–11.

Although I find that the ALJ properly considered Mr. Ortega's combination of impairments and Dr. Silverthorne's opinions, I find that the ALJ failed to determine whether the skills Mr. Ortega obtained in his past relevant work were transferable to the semi-skilled jobs the ALJ determined Mr. Ortega could perform. Consequently, I reverse and remand for further proceedings.

**V. Discussion**

A. <u>The ALJ Properly Considered Whether Mr. Ortega's Impairments or a Combination of Impairments Met a Listing</u>.

At step two of the sequential evaluation process, the Commissioner determines whether a claimant currently has an impairment or combination of impairments which meets or equals the severity of an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1; 20 C.F.R

7

§ 404.1594(f)(2). If the ALJ finds that the claimant does not meet a listed impairment, he or she is required to discuss the evidence and explain why. *See Clifton v. Chater,* 79 F.3d 1007, 1009 (10th Cir. 1996). The ALJ need not discuss every bit of evidence, but "[t]he record must demonstrate that the ALJ considered all of the evidence." *Id*. at 1009–10; *see also Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006) ("It is beyond dispute that an ALJ is required to consider all of the claimant's medically determinable impairments, singly and in combination; the statute and regulations require nothing less.").

Although the ALJ states in his decision that he "[c]onsidered individually and in combination, the claimant's impairments present as of March 25, 2014," AR 17, Mr. Ortega complains that the ALJ "failed to provide an analysis regarding the combination of impairments at this step." Doc. 26 at 7. The general practice in the Tenth Circuit "is to take a lower tribunal at its word when it declares that it has considered a matter." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (2005). Here, it is not necessary to take the ALJ merely at his word, however. The ALJ explained that "Listing 4.05 is not met because the claimant does not experience uncontrolled, recurrent episodes of cardiac syncope documented by electrocardiography." AR 17. In addition, the ALJ specifically considered the effects of obesity and the criteria for musculoskeletal, respiratory, and cardiovascular impairments under the Listings. *Id*. Mr. Ortega does not state any specific impairment that the ALJ failed to consider or how the combination of his impairments would have met a Listing, had they been properly considered. *See* Doc. 26 at 6–8; Doc. 28 at 1–2. The ALJ stated that he considered the combination of impairments, and demonstrated that Mr. Ortega's severe and non-severe impairments were, in fact, considered. The ALJ applied the correct legal standard, and remand is not warranted on this basis.

8

B. The ALJ Properly Considered the Opinion of Dr. Silverthorne.

Mr. Ortega contends that the ALJ failed to properly consider the opinion of consultative examiner Patrick E. Silverthorne, M.D. Doc. 26 at 8–9. Examining physicians may offer an opinion with regard to the claimant's symptoms, diagnosis, and prognosis, as well as the claimant's work-related physical and mental limitations. *See Doyal v. Barnhart*, 331 F.3d 758 (10th Cir. 2003). The Commissioner generally will give greater weight to the opinion of an examining physician than to one who has not examined the claimant. 20 C.F.R § 404.1527(c)(1). When presented with a medical source opinion, the ALJ must weigh the opinion using all of the factors provided in § 404.1527. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). Those factors are (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Id.* While the ALJ is not required to discuss each factor, the ALJ must give specific reasons for the weight he or she assigns to a physician's opinion and specific, legitimate reasons for rejecting it. *Doyal*, 331 F.3d at 764.

Mr. Ortega criticizes the ALJ's treatment of Dr. Silverthorne's opinion by arguing that the ALJ "provided little analysis" and "failed to apply the regulatory factors to Dr. Silverthorne's opinion before rejecting it." Doc. 26 at 9. I disagree. The ALJ did not reject Dr. Silverthorne's opinion outright. Instead, the ALJ considered the factors before affording Dr. Silverthorne's opinion "limited weight."

9

In his opinion, the ALJ considered the length, nature, and extent of the treatment relationship. The ALJ noted that Dr. Silverthorne was a "consultative examiner" and met with Mr. Ortega in the summer of 2014. AR 19. The ALJ also considered the kind of examination and testing that was performed by Dr. Silverthorne and summarized Dr. Silverthorne's examination notes. *Id*. The ALJ also considered the degree to which Dr. Silverthorne's opinion was supported by relevant evidence and considered the consistency between Dr. Silverthorne's opinion and the record as a whole. For example, the ALJ stated that Dr. Silverthorne found it "difficult to estimate" Mr. Ortega's vocational capacity but equivocally "proffered an ability to stand 2-4 hours and sit 2-4 hours in a workday"—referencing both the objective examination and Mr. Ortega's self-reported abilities. *Id*. In addition, although the ALJ gave Dr. Silverthorne's functional assessment only limited weight, he took "the findings of the objective examination and Silverthorne's proximity to a sedentary residual capacity into account." *Id*. Mr. Ortega does not point to any evidence that is inconsistent with Dr. Silverthorne's opinions. *See* Doc. 26 at 8–9; Doc. 28 at 2–3. Although the ALJ did not specifically discuss each factor, it is clear he considered the factors when he assessed Dr. Silverthorne's opinion. Thus, the ALJ applied the correct legal standards in considering Dr. Silverthorne's opinions, and remand is not warranted on this basis.

    C. <u>The ALJ Failed to Determine the Transferability of Skills</u>.

Mr. Ortega contends that the ALJ erred at the final step by failing to identify any transferable skills. Doc. 26 at 9–12. Mr. Ortega argues that the ALJ failed to assess whether he acquired skills in his past relevant work that would enable him to perform the three semi-skilled jobs the ALJ found he could perform. *Id*.

10

At step eight, if a claimant cannot perform his or her past relevant work, the ALJ must assess the ability to perform other work. *Macarages v. Astrue*, 2010 WL 3749468, at *1 (W.D. Okla. Aug. 23, 2010), report and recommendation adopted, 2010 WL 3749455 (W.D. Okla. Sept. 21, 2010) (unpublished) (citing 20 C.F.R. 404.1545(a)(5)(ii)). Transferability of skills becomes an issue when an individual's impairments, though severe, do not meet or equal the criteria in the Listings, but prevent the performance of past relevant work (PRW), and that work has been determined to be skilled or semi-skilled. SSR 82-41, 1982 WL 31389, at *1.

The ALJ found that as of March 25, 2014, Mr. Ortega had severe impairments that did not meet or equal a Listing, but did prevent him from performing his past relevant work as a robot engineer, a meter reader, or meter repairer. AR 16–17, 20, 750. According to the vocational expert, robot engineer is a skilled occupation,[8] and the meter reader and meter repair jobs are both semi-skilled. AR 750. Transferability of skills, therefore, is an issue in determining whether there are other jobs in the national economy that Mr. Ortega can perform. The ALJ had a duty to assess whether Mr. Ortega acquired any transferable skills.

> An ALJ can find a claimant's acquired skills are transferable to other jobs "when the skilled or semi-skilled work activities the claimant did in past work can

---

[8] The Commissioner has defined a "skill" as:

> knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level (requires more than 30 days to learn). It is practical and familiar knowledge of the principles and processes of an art, science or trade, combined with the ability to apply them in practice in a proper and approved manner. This includes activities like making precise measurements, reading blueprints, and setting up and operating complex machinery. A skill gives a person a special advantage over unskilled workers in the labor market.

SSR 82–41, 1982 WL 31389, at *2. A skill cannot be acquired by performing an unskilled job, and a person who has acquired skills that are not transferable to other jobs "has no special advantage." *Id.*

> be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work. This depends largely on the similarity of occupationally significant work activities among different jobs."

*Dikeman v. Halter*, 245 F.3d 1182, 1185 (10th Cir. 2001) (quoting 20 C.F.R. § 404.1568(d)(1)) (internal brackets omitted). The Commissioner bears the burden of proving that the claimant has such transferable skills. *See Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999). Therefore, "[w]hen a finding is made that a claimant has transferable skills, the acquired work skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited in the [ ] ALJ's written decision." SSR 82-41, 1982 WL 31389, at *7.

Here, the vocational expert (VE) did not identify the skills Mr. Ortega acquired in his past relevant work. *See* AR 749–54. The VE did not give an opinion as to the skills required for the three semi-skilled jobs identified as jobs Mr. Ortega could perform. *Id.* In addition, the VE did not testify as to Mr. Ortega's ability to transfer skills acquired from his previous work to perform the identified jobs. *Id.* The omission of such testimony regarding available transferable skills left the ALJ without any evidence of the skills required for the semi-skilled jobs identified by the VE, or Mr. Ortega's ability to perform those jobs.

Moreover, the ALJ expressly declined to address the issue of transferable skills in his written decision, stating that the "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is not disabled." AR 20. An ALJ, however, cannot rely solely on the Medical-Vocation Rules (the Grids) when—as in this case—nonexertional impairments are also present. *See Trimiar v. Sullivan*, 966 F.2d 1326, 1333 (10th Cir. 1992) ("Where nonexertional impairments are also present, the grids alone cannot be used to determine the claimant's ability to perform alternative work."). The ALJ found that while Mr. Ortega had the RFC to perform

sedentary work as defined in 20 C.F.R. § 404.1567(a), he had certain non-exertional limitations,[9] including never climbing ladders, ropes or scaffolds, only occasionally stooping, crouching, kneeling, crawling and climbing ramps or stairs. AR 18. The ALJ further limited Mr. Ortega to avoiding "more than occasional exposure to unprotected heights, dangerous moving machinery, excessive vibration, and extreme cold." *Id.* Thus, the ALJ could not rely solely on the Grids as a substitute for vocational testimony on the transferability of the skills necessary for the semi-skilled work the ALJ found Mr. Ortega was capable of performing.

The ALJ had a duty to assess whether the skills from Mr. Ortega's past relevant work would transfer to the semi-skilled jobs identified at the last step of the sequential evaluation process ending Mr. Ortega's disability status, and identify those skills in his written opinion. The ALJ did not apply the correct legal standard when determining whether there were other jobs in the national economy that Mr. Ortega can perform. Consequently, remand is required.

---

[9] The Social Security Administration classifies work in the national economy by the exertional levels of sedentary, light, medium, heavy or very heavy. SSR 83-10, 1983 WL 31251, at *2. The levels of work are defined by the extent that they require each of the primary strength activities—sitting, standing, walking, lifting, carrying, pushing, and pulling. *Id.* at *2, *5. A claimant has an exertional limitation when he or she has an impairment-caused limitation that affects his or her ability to perform an exertional, or strength, activity.

Conversely, a non-exertional impairment is an impairment "which does **not** directly affect the ability to sit, stand, walk, lift, carry, push, or pull." *Id.* at *6 (emphasis added). Nonexertional impairments include impairments which affect the "use of the body to climb, balance, stoop, kneel, crouch, and crawl." *Id.* A claimant has a nonexertional limitation when he or she has an impairment-caused limitation that affects her ability to perform "work activities other than the primary strength activities." *Id.* at *7 (emphasis added); *see also See Trimiar v. Sullivan*, 966 F.2d 1326, 1338 n.3 (10th Cir. 1992).

## VI. Conclusion

For the reasons stated above, I GRANT plaintiff Ronald Polanco Ortega's Motion to Reverse and Remand to Agency for Rehearing with Supporting Memorandum (Doc. 26) in part and deny it in part, and remand this case to the Social Security Administration for further proceedings consistent with this opinion.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent